# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ROBERT D. HEIDEN,

        Plaintiff,

vs.

LINDA BOFFELI, et al.,

        Defendants.

No. C18-3068-LTS

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION AND PROCEDURAL HISTORY

This case is before me on a motion (Doc. 41) for summary judgment filed by Karen Anderson, Patricia Dettbarn, Linda Boffeli and Jana Hacker (defendants). Plaintiff Robert Heiden has filed a resistance (Doc. 49) and defendants have filed a reply (Doc. 55). I find oral argument is unnecessary. *See* Local Rule 7(c).

Heiden initiated this action by filing a pro se complaint (Doc. 1) in the Southern District of Iowa on November 28, 2018, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. The case was transferred to this district on December 7, 2018, (Doc. 5), and defendants filed their answer (Doc. 18) on August 13, 2019. I subsequently granted Heiden's motion (Doc. 3) to appoint counsel.

## II. RELEVANT FACTS

The following facts are undisputed except where otherwise noted:

Heiden has been committed to the custody of the Iowa Department of Corrections since May 11, 1990, to serve a life sentence. Doc. 42-2 at 1. While Heiden has been housed at several facilities in Iowa, the allegations in this case arise from his stay at the Anamosa State Penitentiary (ASP) in Anamosa, Iowa, and the Fort Dodge Correctional

Facility (FDCF) in Fort Dodge, Iowa.  Doc 42-2 at 2.  Heiden spent time at the ASP from April 13, 2004, to July 7, 2016, and again from July 22, 2016, to January 26, 2017. *Id.*  During the times relevant to this case, Boffeli was a registered nurse at the ASP and Dettbarn was the nursing director.  *Id.*  Since January 26, 2017, Heiden has been serving his sentence at the FDCF.  *Id.* at 2.  During the times relevant to this case, Anderson was a registered nurse and the nursing director at the FDCF and Hacker was a nurse practitioner at that facility.  *Id.*

At both facilities, medical care is available to inmates 24 hours a day.  Doc. 41-2 at 2.  Upon request, an inmate is seen first by a member of the nursing staff.  *Id.*  The nurse will then decide, sometimes after consulting with other medical staff, whether the patient requires additional care, such as an appointment with a physician's assistant, dentist, nurse practitioner, psychiatrist, or doctor.  *Id.*  If an inmate requests a visit with an outside medical consultant, a prison medical provider (either a doctor, dentist, nurse practitioner, physician's assistant, or optometrist) assesses the issue and determines whether an outside consultation is medically necessary.  *Id.* at 2-3.

Heiden has periodically reported right shoulder pain since he underwent rotator cuff surgery in 2013.  From 2013 to 2018, he received the following care[1] before he discovered the permanent impairment he now alleges is the result of constitutionally deficient care:

- April 20, 2009: Heiden underwent an arthroscopy on his right shoulder, which was accompanied by rotator cuff repair.  Doc. 49-3 at 13.  The surgery took place at the University of Iowa Hospitals and Clinics (UIHC).

- October 4, 2013: Heiden met with Dettbarn to discuss his ongoing concerns for his right shoulder and requested an appointment at the UIHC.  Dettbarn told him ASP was in the process of scheduling the

---

[1] This is not the entirety of Heiden's medical history, but only what is relevant to this case.  I have omitted the names of any providers not named as defendants in this lawsuit.

2

appointment.  Doc. 41-3 at 9.

- December 4, 2013: Heiden underwent a second arthroscopy on his right shoulder, again accompanied by rotator cuff repair, at the UIHC. Doc. 49-3 at 14.  Over the next few days, Heiden received various post-operation treatments from healthcare providers.  Doc. 42-1 at 163-86.

- March 17, 2014: Heiden met with a nurse to ask whether he had a follow-up appointment at the UIHC for his right shoulder.  He indicated he had a limited range of motion and, based on his conversations with other inmates who had undergone the surgery, he was concerned something was wrong with the way his right shoulder was healing.  The nurse requested an ASP doctor review Heiden's chart, though it appears no ASP doctor did.  Doc. 42-1 at 189.

- March 20, 2014: Three days after complaining of right shoulder pain, Heiden met with Boffeli in a follow-up appointment at which she observed him crawling on his hands and knees. She did not notice any expressions of discomfort and she wrote in the encounter notes that he displayed a full range of motion.  Boffeli requested a chart review by a doctor.  Again, it does not appear an ASP doctor performed this review.  Doc. 42-1 at 190.

- April 15, 2015: Heiden reported shoulder pain during a physical examination with an ASP doctor, who prescribed Meloxicam in response.  Doc. 42-1 at 191-95.

- January 20, 2016: An ASP doctor reviewed Heiden's medical chart and previous providers' notes, though it is unclear what prompted his review.  He recommended Heiden perform various low-impact shoulder exercises.  Doc. 42-2 at 83.

- January 27, 2016: Heiden requested copies of the shoulder exercises he was prescribed in 2013, as he claimed they were never given to him and he had "done shoulder exercises on his own" after his second rotator cuff surgery.  Doc. 42-2 at 86.

- February 1, 2016: Heiden filed his first grievance (Grievance No. 28383) with the ASP, alleging the medical staff had neglected him, as a medical chart review slated to be done in March 2014 was not completed until January 20, 2016.  Doc. 41-3 at 52.

- March 17, 2016: Heiden saw an ASP doctor for right shoulder pain. Heiden reported that he was doing his range of motion and

3

strengthening exercises regularly. The doctor gave Heiden a cortisone injection and Heiden noted relief with the injection. The doctor advised Heiden to continue his range of motion and strengthening exercises and to continue taking Naproxen. Doc. 42-2 at 101.

- June 14, 2016: Heiden requested a doctor's appointment for his right shoulder. Doc. 42-2 at 140.

- June 20, 2016: Heiden saw an ASP doctor for his right shoulder pain. Heiden felt that the right shoulder was weaker by 20-30 pounds than the left. The doctor diagnosed him with bursitis of the shoulder, though he noted Heiden had a full range of motion. The doctor advised Heiden to alternate between placing ice and heat on his shoulder, take Tylenol instead of NSAIDs and follow up as needed. Doc. 42-2 at 144.

- August 24, 2016: Heiden requested a follow-up on his right shoulder, claiming his shoulder pain had worsened over the previous few weeks. He noted that he had started weightlifting the day before. The nurse referred him to a doctor. Doc. 42-3 at 18.

- August 29, 2016: Heiden saw an ASP doctor for his right shoulder pain. The doctor diagnosed Heiden with arthritis and recommended band therapy and NSAIDs. Doc. 42-3 at 20.

- September 27, 2016: Heiden requested to extend his physical therapy for his right shoulder, as he believed it was helping his shoulder heal. Doc. 42-3 at 27.

- October 5, 2016: Heiden requested a doctor's appointment for his right shoulder because, while the physical therapy exercises had helped to some extent, he did not have strength in his arm and his shoulder was "numb and tingly." Doc. 42-3 at 28.

- October 11, 2016: Heiden met with an ASP doctor for his right shoulder pain. The doctor attributed Heiden's pain to arthritis but also referred Heiden to the UIHC for a consultation with their orthopedics department. The doctor also told Heiden to continue resistance band therapy. Doc. 42-3 at 32.

- November 4, 2016: Heiden attended an appointment at the UIHC, where a doctor suggested Heiden could have a recurrent or new tear in his rotator cuff or that he suffered from early arthritis and inflammation. The doctor recommended diagnostic shoulder injections

4

and suggested Heiden may require an additional MRI on his rotator cuff in the future. Doc. 42-3 at 43.

- November 16, 2016: An ASP doctor referred Heiden to the UIHC for a right shoulder injection. Doc. 49-3 at 10.

- December 20, 2016: A UIHC doctor performed two diagnostic shoulder injections on Heiden's right shoulder, which brought some reprieve. Doc. 42-3 at 58.

- January 4, 2017: Heiden saw an ASP doctor for right shoulder pain. Heiden had numbness and tingling in his right hand, and he had been using a hammer drill at work. The doctor recommended he rest the shoulder and use Naproxen as needed, as it was too soon for another steroid injection. Doc. 42-3 at 60-61.

- January 23, 2017: Heiden went to health services and asked whether a doctor had made another appointment at the UIHC, as his shoulder had worsened and he demonstrated a limited range of motion. Doc. 42-3 at 63.

- January 24, 2017: Heiden requested a copy of his medical files from Boffeli. Doc. 42-3 at 64.

- January 26, 2017: Heiden was transferred to the FDFC. Doc. 41-2 at 5.

- April 3, 2017: Hacker ordered various lab work before Heiden's prison-mandated physical. Doc. 42-3 at 68.

- April 20, 2017: Hacker administered Heiden's physical, during which he requested a follow-up for his shoulder at the UIHC. Doc. 42-3 at 73.

- July 25, 2017: Heiden requested an appointment with a doctor for his shoulder pain. He said he believed his shoulder was digressing and that he needed to go back to the UIHC "to see if something is really wrong with my shoulder and my knee both." A nurse referred him to Hacker. Doc. 42-3 at 78-79.

- August 1, 2017: Heiden met with Hacker, complaining of right shoulder pain and a limited range of motion. Heiden alleged he had never been given access to stretch bands or any other type of therapy after his 2013 surgery. Hacker provided stretch bands and exercises for his shoulder. Doc. 42-3 at 81.

5

- September 24, 2017: Heiden complained via the prison email system that his shoulder still hurt, he could not sleep on his right side and pain was shooting up into his neck. A nurse reviewed the request and forwarded it to Hacker. Doc. 42-3 at 86.

- September 25, 2017: Hacker responded to Heiden via the prison email system stating, "Pt was seen approx 2 mos ago, this is the first further complaint I've heard. Pt had surgical repair of both joints within the past 2 (sic) years, he had a XR of his knee, unremarkable, and exercises for his shoulder as admitted he did not do any after the surgery. He should utilize Ibuprofen or Naproxen for pain, rather than pain off. He has a weight card, appears he is lifting weights, he has had the card for at least the past 2 months that I could note." Doc. 42-3 at 87.

- November 2, 2017: Heiden met with Hacker to discuss both his knee and his right shoulder. He reported pain in his right shoulder, which he said dated back to his rotator cuff surgery. Previously prescribed stretching exercises had not helped. In her comments, Hacker wrote "On review, pt has rec'd a single injection to the shoulder at UIHC due to cont. c/o pain." She attributed the pain to his arthritis and wrote that she would review his "UIHC notes." Doc. 42-3 at 36-37.

- March 27, 2018: Heiden requested a doctor's appointment for his right shoulder via the prison email system. He stated Hacker had not "got back with me like she said she would," and his shoulder was giving him more problems. A nurse forwarded his request to a doctor. Doc. 42-3 at 90.

- April 9, 2018: Heiden inquired via the prison email system whether he had been scheduled for a doctor's appointment regarding his right shoulder. A nurse informed Heiden he had an appointment scheduled "in the future" with a practitioner. Doc. 42-3 at 91.

- April 17, 2018: Heiden visited Health Services and complained of right shoulder pain, stating he could hardly lift his arm and suggesting that without treatment, he would not be able to lift it at all in a few months. A nurse consulted with an FDCF doctor who requested Heiden be scheduled for an appointment the following week. Doc. 42-3 at 92.

6

- May 1, 2018: Heiden met with the same FDCF doctor to discuss his right shoulder pain. He recommended Heiden undergo an MRI at the UIHC. Doc. 49-3 at 8.

Heiden underwent an MRI of his right shoulder at the UIHC on June 1, 2018. The results showed the following:

- a full-thickness, full-width tear of the supraspinatus;
- a full-thickness, near full-width tear of the infraspinatus tendon with retraction to the level of the acromioclavicular joint;
- severe degenerative changes at the a.c. joint with moderate degenerative changes at the glenohumeral joint;
- moderate fatty atrophy of the suprasinaptus and to lesser extent the infraspinatus;
- mild fatty atrophy of the superior sucscapularis and
- moderate to severe tendinopathy of the subscapularis.

Doc. 42-3 at 111. Heiden filed a second grievance (Grievance No. 37580) on July 10, 2018, stating "prolong[ing] access to treatment over years caused worsening of [his] right shoulder condition." Doc. 41-3 at 8-22.

Heiden subsequently sought an independent medical analysis of his shoulder from Dr. Jacqueline Stoken, D.O., who is certified in physical medicine and rehabilitation, independent medical examination and holistic medicine. Based on her report, Heiden alleges:

> [T]he prison officials [sic] delays and failures in treatment of Heiden's right shoulder pain after the December 2013 surgical repair led to permanent impairment and a worsening of his condition.

> [P]rison officials misdiagnosed the cause of the pain, which Heiden had described, for years, on several occasions, was not getting any better and often was worse, but that the defendants had, nevertheless, chose to continue with less expensive and efficacious and conservative treatments.

> [T]he severity in the tears in the tendons of Heiden's right shoulder—the true origin of his pain—and the amount of time that had elapsed between the December 2013 surgical repair and the MRI performed in June 2018

7

had allowed the tendons to retract to the point where they could no longer be surgically repaired.

[T]he prison's personnel's chosen course of treatment of Heiden's right shoulder after the 2013 surgery fell below prevailing professional medical standards.

Doc. 49 at 8-9.

### III.     SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

8

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

Heiden asserts his claim under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any

9

State . . . , subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Thus, "[o]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under § 1983, a plaintiff must establish a "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007).

Heiden claims the defendants were deliberately indifferent to his serious medical needs and therefore violated the Eighth Amendment's ban on cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). He asserts that they continuously misdiagnosed his shoulder pain and delayed treatment to the point that a surgical repair was no longer a viable treatment option, causing permanent damage to his shoulder. In seeking summary judgment, defendants argue (1) Heiden's claims are barred

10

by the statute of limitations, (2) Heiden cannot demonstrate that they acted with deliberate indifference and (3) they are entitled to qualified immunity.[2] Docs. 41, 55. I will address these arguments in turn.

## A.    *The Statute of Limitations*

Claims brought under 42 U.S.C. § 1983 are governed by the statute of limitations for personal injury claims in the state where the suit was brought. *Devries v. Driesen*, 766 F.3d 922, 923 (8th Cir. 2014). Iowa enforces a two-year statute of limitations for personal injury actions. Iowa Code § 614.1(2); *see also Wycoff v. Menke*, 773 F.2d 983 (8th Cir. 1995) (applying Iowa's two-year statute of limitations to § 1983 claims). "Section 1983 claims . . . may be subject to any tolling rules that Iowa courts have applied to that statute." *DeVries*, 766 F.3d at 922. Under Iowa Code § 614(9)(a), Iowa courts apply a "discovery rule," requiring actions "founded on injuries to the person . . . . against any physician and surgeon . . . or nurse . . . arising out of patient care" to be brought

> within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury.

*See also Estate of Pepper ex rel. Deeble v. Whitehead*, 686 F.3d 658, 666 (8th Cir. 2012) ("The discovery rule tolls the statute of limitations until the plaintiff has discovered the fact of the injury and its cause or by the exercise of reasonable diligence should have

---

[2] Defendants also argue they are entitled to summary judgment because Heiden failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). For purposes of considering the motion for summary judgment, I will assume without deciding that Heiden exhausted those remedies.

discovered these facts.") (citing *Hallett*, 713 N.W.2d at 231) (internal quotation marks omitted).

Defendants allege Heiden knew or reasonably should have known of his injury and its cause on January 21, 2016, when he met with Dettbarn in an attempt to informally resolve the issues that led to his first grievance.[3]  Doc. 55 at 11; Doc. 41-3 at 52.  As such, they argue that this action is barred by the applicable two-year statute of limitations because it was not filed until November 28, 2018.  *Id.*  Heiden argues that he did not discover his injury until after the June 1, 2018, MRI, meaning his action was filed well within the statute of limitations.

In *Murtha v. Cahalan*, 745 N.W.2d 711 (Iowa 2008), the Iowa Supreme Court explained:

> The key to applying [Iowa's tolling statute] is determining when the plaintiff knew or should have known of her injury, i.e., the physical harm suffered. However, in order to make this determination, the initial question must be at what stage her condition became an "injury" within the meaning of the statute.  In a case involving a condition that is not immediately diagnosed . . . the "injury" does not occur merely upon the existence of a continuing undiagnosed condition.  Rather, the "injury" . . . occurs when "the problem [grows] into a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *DeBoer*, 673 P.2d at 914. Once a fact finder identifies the injury by answering that question, the statute requires it to determine when the plaintiff knew or should have known of the injury and the cause in fact of the injury.  These inquiries— what constitutes the injury and its cause and when the plaintiff is charged with knowledge of such injury and its cause—are highly fact-specific.

---

[3] While there is no record of a meeting between Dettbarn and Heiden on January 21, 2016, Heiden referenced a meeting with Dettbarn on that date as his attempt to resolve the matter informally when he filed his first grievance on February 1, 2016.  Doc. 41-3 at 52.  In addition, the records reflect that when Heiden met with a nurse on January 27, 2016, the nurse noted that he seemed upset when told that there was no record of a conversation he claimed to have had with another nurse a few nights before.  Doc. 42-2 at 86.

*Id.* at 715. Thus, the issue is at what point Heiden knew or should have known his shoulder injury had developed into "a more serious condition which poses greater danger to the patient or which requires more extensive treatment." This issue may not be resolved on a motion for summary judgment. A reasonable factfinder could conclude Heiden did not have reason to know – and did not actually know – of an injury until he received the results of his June 2018 MRI. Such a finding would render this action timely. As such, defendants are not entitled to summary judgment on their statute of limitations argument.[4]

## B. Deliberate Indifference

To demonstrate deliberate indifference,[5] an inmate must show "that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997)). Defendants do not argue that Heiden lacked an objectively serious medical need. However, they contend

---

[4] Alternatively, defendants argue Heiden knew or reasonably should have known of his injury as early as October 4, 2013, when he met with Dettbarn to discuss his shoulder pain. Doc. 55 at 11. However, Heiden alleges that the defendants provided deficient care after his December 2013 surgery. Defendants are not entitled to a finding, as a matter of law, that the statute of limitations for Heiden's claim began to run as early as October 4, 2013.

[5] At the outset, a claim of deliberate indifference is precluded if the record does not contain any verifying medical evidence that a delay in treatment resulted in a detrimental effect. *Coleman*, 114 F.3d at 785 (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). Inmates who "alleg[e] a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks omitted). Heiden has provided an affidavit from Dr. Stoken in which she concludes "the delays and failures in treatment by defendants of Heiden's right shoulder pain after the December 2013 surgical repair led to permanent impairment and a worsening of his condition." Doc. 49-2 at 7. Defendants do not meaningfully argue otherwise.

that even viewing facts in the light most favorable to Heiden, no reasonable jury could find the defendants were deliberately indifferent to Heiden's medical needs. Heiden disagrees, arguing that deliberate indifference is a factual issue to be resolved at trial. Because Heiden alleges the constitutionally-deficient care occurred after his 2013 surgery, I will focus only on defendants' actions after that date.

An official is deliberately indifferent "if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). The defendants' knowledge must be two-fold; they must have recognized a substantial risk of harm and that their conduct was irresponsible considering the risk. *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) ("The subjective prong has two components: '[T]he evidence must show that the officers recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk.'") (quoting *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)). A plaintiff may prove the defendant's knowledge of the risk of harm through circumstantial evidence. *Letterman*, 789 F.3d at 862. For instance, a plaintiff may show the defendant "had been exposed to information concerning the risk and thus 'must have known' about it," or that the risk was obvious the defendant knew his or her actions were inappropriate. *Letterman*, 789 F.3d at 862 (quoting *Farmer*, 511 U.S. at 842).

A plaintiff must then show a defendant deliberately disregarded the risk. *Selk*, 508 F.3d at 873. This standard is akin to criminal recklessness. *Shipp*, 9 F.4th at 703. "Although the level of blameworthiness must rise above negligence, a plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with knowledge that harm w[ould] result.' " *Letterman,* 789 F.3d at 862 (quoting *Farmer*, 511 U.S. at 835). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lickhard*, 7 F.3d 1370, 1374 (8th Cir. 1993). A claimant's "mere disagreement with treatment decisions does not rise to the level of constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). If a

14

defendant responded reasonably to a risk, he or she is not liable, even if the plaintiff ultimately suffered an injury. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (citing *Farmer*, 511 U.S. at 844).

With these standards in mind, I will address Heiden's claims against each named defendant.

### 1. *Karen Anderson*

Anderson saw Heiden four times during the period of time after his 2013 surgery. Each visit occurred after June 2018, when Heiden learned of the irreparable damage to his right shoulder. On November 13, 2018, Anderson and Heiden discussed Heiden's upcoming appointment at the UIHC for his knee. Doc. 42-3 at 146. On October 28, 2019, almost one year after Heiden filed this action, Anderson took an order from the DOC Medical Director requesting inmates be tested for Hepatitis C. While she did not personally interact with Heiden, official records categorize this act as a nursing encounter. Doc. 42-4 at 35. During the last two encounters between Anderson and Heiden (December 27, 2019, and May 1, 2020), Heiden met with a healthcare provider for conditions unrelated to his shoulder and Anderson's only role was to record the resulting order. Doc. 42-4 at 56, 78. At no time did Anderson provide her own assessment or recommendation with respect to Heiden's right shoulder.

Based on this record, there are no genuine issues of material fact as to whether Anderson had actual knowledge of an ongoing risk to Heiden's health and deliberately disregarded that risk. Anderson is entitled to summary judgment.

### 2.    Patricia Dettbarn

Dettbarn had two documented nursing encounters with Heiden after his December 2013 rotator cuff surgery, neither of which involved his right shoulder.[6] The first took place on January 27, 2016, when Heiden asked Dettbarn when his knee would "get fixed" and she told him he had an upcoming doctor's appointment to address the issue. Doc. 42-2 at 86-88. The second took place on May 8, 2016, during which there appears to have been no discussion regarding Heiden's shoulder. Doc. 42-2 at 127. Rather, Heiden again inquired about possible knee surgery. *Id.*

As noted above, Heiden claims he also met with Dettbarn on January 21, 2016, in an attempt to informally resolve issues before he filed his first grievance. Doc. 41-3 at 52. Indeed, defendants rely on this claimed meeting to assert that Heiden's two-year statute of limitations began to run on that date. Doc. 55 at 10-11. Even if the meeting occurred as Heiden alleges, the record contains virtually no information about the meeting. There is no evidence that Dettbarn had actual knowledge of an ongoing risk of injury to Heiden's shoulder, either as a result of a January 21, 2016, meeting or otherwise. Nor is there evidence that could support a finding that Dettbarn acted with deliberate indifference to Heiden's medical needs.

Based on this record, Dettbarn is entitled to summary judgment.


### 3.    Linda Boffeli

Boffeli had nine nursing encounters with Heiden after his 2013 surgery. The only encounter related to his right shoulder took place on March 20, 2014. Doc. 42-1 at 190. This follow-up appointment occurred three days after Heiden reported his right shoulder pain and limited mobility to a different nurse. Doc. 42-1 at 189. Boffeli wrote:

---

[6] Heiden also met with Dettbarn on October 4, 2013, to discuss his right shoulder pain, but this meeting took place before his second rotator cuff surgery.

> This writer observed this offender crawling on his hands and knees and bending every which way while assembling a desk at the nurses desk. Offender was observed using a drill with each hand without difficulty. Appeared to move bilateral arms equally, easily and freely without any deficits in movement noted. No facial expressions of discomfort noted or moaning/grunting with movement. Full range of motion noted with shoulders multiple times.

Doc. 42-1 at 190. Nonetheless, Boffeli requested that a physician review Heiden's chart. Doc. 42-1 at 190.

Again, viewing the evidence most favorably to Heiden, no reasonable factfinder could find Boffeli acted with deliberate indifference. While Heiden's actions (such as crawling on his hands and knees and using a drill with each hand) seemingly undermined the veracity of his complaints, Boffeli nonetheless scheduled a chart review by a facility physician. Boffeli provided the maximum care she could, as the prison nursing staff cannot prescribe medications and lack authority to refer inmates to outside medical consultants. Doc. 42 at 2.

Boffeli was not required to "go beyond her scope of practice as a licensed vocational nurse." *See Shipp*, 9 F.4th at 704 (holding that a nurse does not have a duty to "go beyond her scope of practice as a licensed vocational nurse," and that the defendant-nurse acted properly by requesting further review by a facility doctor). Because there is no evidence that could support a finding that Boffeli acted with deliberate indifference, she is entitled to summary judgment.

### 4. *Jana Hacker*

Hacker had six nursing encounters with Heiden after his 2013 surgery, with four directly or indirectly involving his shoulder. On April 20, 2017, Hacker completed Heiden's prison-ordered physical, noting a full range of motion in his upper extremities. Doc. 42-3 at 71. While Heiden did not lodge any medical complaints at the time, he did request a follow-up appointment at the UIHC for his shoulder and knee. *Id.* at 70-76.

17

On August 1, 2017, Heiden asked to be seen for his right shoulder and left knee. Doc. 42-3 at 80. He told Hacker he had never received access to stretch bands or any type of therapy after his right shoulder surgeries and had suffered from shoulder pain since those surgeries. *Id.* During her examination, Hacker found no swelling or tenderness in his shoulder but noted that Heiden had pain and a limited range of motion. *Id.* Hacker attributed Heiden's shoulder pain to arthritis (which had been diagnosed by a different provider in August 2016) and recommended stretch band exercises. *Id.* at 81; Doc. 42 at 6.

On September 25, 2017, Hacker received a note from Heiden via the prison email system that stated:

> On the second of Aug. Jana Hatcher (sic) sent me to the hospital for x-rays [for his knee] and she gave me a red band for my shoulder. I am still having troubles with the both of them. My knee is still tender and in pain. Shoulder is still troubling me, can't sleep on that side and is shooting pain up into my neck.

Doc. 42-3 at 87. Hacker responded as follows:

> Pt was seen approx 2 mos ago, this is the first further complaint I've heard. Pt had surgical repair of both joints within the past 2 (sic) years, he had a XR of his knee, unremarkable, and exercises for his shoulder as admitted he did not do any after the surgery. He should utilize Ibuprofen or Naproxen for pain, rather than pain off. He has a weight card, appears he is lifting weights, he has had the card for at least the past 2 months that I could note.

Doc. 42-3 at 87.

On November 2, 2017, Heiden asked to be seen again for right shoulder pain. Doc. 42-3 at 36-37. He claimed the pain had been ongoing since his surgery three years prior and that his stretching exercises had not helped. *Id.* Hacker noted Heiden did not appear to be in pain and his shoulder was not swollen or tender, although he did have a limited range of motion. *Id.* Hacker attributed the shoulder pain to arthritis and wrote that she would review notes from the UIHC. *Id.* at 37. Hacker was subsequently

18

reassigned to a different prison. There is no evidence she received and reviewed the UIHC notes, nor that she asked other practitioners to examine Heiden's shoulder.

Heiden notes that Dr. Stoken has provided an opinion that "easier and less efficacious and more conservative treatments and therapies, such as band therapy and injections, were inadequate under professional standards to address the seriousness of the condition." Doc. 49-3 at 15. Dr. Stoken further states:

> Treatment options, such as surgical repair, would have been viable with correct indication and diagnosis postoperatively to the 2013 repair, and the departure from professional standards by continuing conservative treatments that were contraindicated by the lack of pain relief and the escalation and worsening of Mr. Heiden's pain resulted in the treatments no longer being viable. The misdiagnosis of Mr. Heiden's right shoulder injury after the 2013 surgical repair, and in the following years, and in the decision to delay surgery for several years, adversely affected the potential for a good result or prognosis, pain improvement, and restoration of the shoulder function, given the nature of his injury, which resulted in permanent damage and impairment of Mr. Heiden's shoulder.

Doc. 49-2 at 15. As such, Heiden contends there is a genuine issue of material fact as to whether Hacker deliberately disregarded the risk to his health

The question of whether care is professionally adequate is not the same as whether a defendant is deliberately indifferent. Deliberate indifference is a "highly culpable" state of mind. *Choate v. Lickhard*, 7 F.3d 1370, 1374 (8th Cir. 1993); *Farmer*, 511 U.S. at 834. ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment.") (internal quotation marks and citations omitted). The Eighth Amendment protects prisoners from "[g]rossly incompetent or inadequate care . . . where the treatment is so inappropriate as to evidence … a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-41. Substandard care alone will not suffice. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983.").

19

To show officials were deliberately indifferent by misdiagnosing an injury, a plaintiff must show more than gross negligence. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). A claim that an official deliberately disregarded a risk is evaluated "in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862 (quoting *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000)). Deliberate indifference cannot be determined with the use of "hindsight's perfect vision." *Letterman*, 789 F.3d at 862.

At most, Dr. Stoker's opinions indicate that she takes issue with (1) Hacker's attribution of Heiden's pain to arthritis and (2) Hacker's recommendations for band exercises and pain management medication.[7] However, these actions cannot be considered obviously inadequate. The first time Heiden told Hacker of his shoulder pain, he suggested the pain was connected to lackluster post-operative care following his 2013 rotator cuff surgery. However, Heiden did not present any signs of injury. At that point, his surgery had occurred more than three years earlier and Heiden had since been diagnosed with arthritis. Hacker prescribed treatment in line with his arthritis diagnosis.

After Hacker received Heiden's note via the prison email system almost two months later, she prescribed pain medication and suggested that the pain may have been related to weightlifting, an activity Heiden had continued despite repeated shoulder pain. After Heiden and Hacker spoke a third time, Hacker indicated she would review his records more closely. As Heiden's pain continued, Hacker altered her diagnosis and treatment recommendations in tandem.

Even if Hacker did not act as aggressively as hindsight would indicate, her care did not come close to the level of being so inappropriate that it amounted to a refusal to provide essential treatment. *See Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir.

---

[7] There is no evidence in the record suggesting that Hacker made the decision to delay surgery.

1993) ("The fact that Dr. Wynne misdiagnosed the appellant's condition, that his method of physical examination and treatment may not have followed community standards, or that he disagreed with appellant's suggested course of treatment does not amount to deliberate indifference in violation of the Eighth Amendment."); *see also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Even assuming Hacker did not take any further steps after her third meeting with Heiden, no reasonable juror could find Hacker acted with a level of culpability equal to criminal negligence. Hacker is entitled to summary judgment.

### C.   *Qualified Immunity*

Alternatively, the defendants argue they are entitled to qualified immunity. "Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 849 (8th Cir. 2006) (quoting *Pool v. Sebastian County, Ark.*, 418 F.3d 934, 942 (8th Cir. 2005)). "To overcome qualified immunity, plaintiffs must demonstrate both that '(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation.' " *Davis v. County of Gage, Nebraska*, 807 F.3d 931, 936 (8th Cir. 2015) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir.2015)).

As a matter of law, Heiden has failed to demonstrate that any defendant deprived him of a constitutional or statutory right. As such, and as an alternative basis for granting their motion, I find that all of the named defendants are entitled to qualified immunity.

## V.    CONCLUSION

For the reasons set forth herein, the defendants' motion for summary judgment (Doc. 41) is **granted** as to all defendants.  Because this order disposes of all claims, judgment **shall enter** in favor of the defendants and against plaintiff Robert Heiden.


**IT IS SO ORDERED.**

**DATED** this 9th day of March, 2022.

_____
Leonard T. Strand, Chief Judge

22